UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-23017-CIV-GOODMAN
[CONSENT CASE]

VICKI KROLL,

      Plaintiff,

v.

CARNIVAL CORP.,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO STRIKE
## PLAINTIFF'S PURPORTED REBUTTAL EXPERT, OR TO LIMIT HIS TESTIMONY

*"If it walks like a duck, quacks like a duck, swims like a duck and looks like a duck, then it must be a duck."*
        -   *Proverb*

Dr. Nicholas D. A. Suite is a neurologist. Counsel for Plaintiff, Vicki Kroll, who allegedly slipped on a wet, slippery surface while a passenger aboard the Carnival *Vista*, retained Dr. Suite as an expert witness. According to an attachment to his expert report [ECF No. 43-7], Dr. Suite has been retained as an expert witness in 119 cases over the past four years. Of those retentions, 104 have been for plaintiffs and 15 have been for defendants.

According to Kroll, she retained Dr. Suite as an expert to rebut the opinions of Dr. Victor Barredo, a Miami-based neurologist who Defendant Carnival Corporation

retained and disclosed after Kroll disclosed the retention of Dr. Michael Cook, a podiatrist. Carnival's counsel took Dr. Cook's deposition on April 23, 2020. According to Carnival, this deposition turned out to be a disaster for Plaintiff.

Specifically, as Carnival explains in its Motion to Strike Plaintiff's Rebuttal Expert, Or, In the Alternative, to Exclude or Limit His Testimony [ECF No. 43], Dr. Cook (1) specifically conceded that his opinions about Kroll's neurological complaints were outside the scope of his expertise, and (2) even agreed to defer to Carnival's expert neurologist concerning the cause of Kroll's purported peroneal nerve injury.

Carnival's theory is that Plaintiff's counsel engaged in a "late scramble" to retain a neurologist "to take over as the damages witness in chief once it became apparent that Dr. Cook was miscast outside of his field of expertise and/or too conservative." [ECF No. 43, p. 3].

Carnival contends that Dr. Suite is not an actual rebuttal expert at all. Instead, Carnival argues, he is *disguised* as a rebuttal effort but is actually a direct, independent expert who was brought in "at the bottom of the ninth inning" to "triage [Kroll's] damages after significant deficiencies manifested" during Dr. Cook's deposition. *Id.* at pp. 1, 5. It says his so-called rebuttal report is actually designed to present a "new and retooled" plaintiff's case. *Id.* at p. 1. Carnival highlights the new damages model offered by Dr. Suite, who provides an impairment rating seven times the rating assigned by Dr. Cook and who injected a new future medical plan of $1.62 million. *Id.*

In other words, Carnival says, Plaintiff's eleventh-hour designation of Dr. Suite is an "untimely," "improper," and "desperate effort to reboot the plaintiff's case in chief." *Id.* at p. 7. Carnival argues that Dr. Suite, as an independent, direct expert, should have been disclosed as one by the deadline for disclosing those experts. But he was not disclosed at that time because Kroll did not even realize a need for him until her counsel learned of Dr. Cook's purported inadequacy during his deposition.

Plaintiff, of course, disagrees.

In her response [ECF No. 46], she proclaims that Dr. Suite *is* a proper rebuttal expert. She notes that rebuttal evidence is permitted if it contradicts or rebuts evidence "on the same subject matter identified by an initial expert witness." *Id.* at p. 2. She argues that Florida federal courts broadly construe the "same subject matter" concept and she relies on the trial court's broad discretion in deciding whether to permit expert rebuttal testimony. *Id.*

Moreover, Kroll notes, she was willing (and still is willing) to permit Carnival to take Dr. Suite's deposition, which, according to her perspective, eliminates any potential prejudice to Carnival. *Id.* at p. 8. In its Reply [ECF No. 54], Carnival notes that it has no interest in taking Dr. Suite's deposition at this point, and it provides myriad reasons why it would *still* be prejudiced even if it took his deposition.

For the reasons outlined in greater detail below, the Undersigned **grants in large part** and **denies in small part** Carnival's motion. Kroll will be able to use those few

3

portions of Dr. Suite's report which do in fact rebut the expert opinions of Carnival's neurologist, Dr. Barredo. All other opinions are stricken and will be excluded. Carnival may take Dr. Suite's deposition (even though it previously said it did not want this relief) and it may file a *Daubert* motion[1] to challenge the modest number of *bona fide* rebuttal opinions Dr. Suite included in his report. Carnival may file this motion with or without taking Dr. Suite's deposition, but, regardless of its decision on the deposition, the *Daubert* motion must be filed by September 14, 2020.

## I.     Factual and Procedural Background

Kroll's Complaint alleges the following scenario:

While walking to the buffet area on the Lido Deck,[2] Kroll lost her footing on a wet and/or slippery surface when she reached a tiled area. As a result of the fall, she suffered traumatic injuries, including a chipped-off big bone which went into her ankle, torn tendons, broken ankle bones, swelling to her tendons, muscles, and bones, and severe injuries to her bone. [ECF No. 1, p. 2].

---

[1]     *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[2]     The Lido Deck is the deck which is home to the outdoor swimming pool and adjacent bars, restaurants, and eating options. Many of the lawsuits filed in this district by passengers against cruise ship operators concern slips and trips and falls on the Lido Deck.

The medical staff aboard the ship did not take X-rays, misdiagnosed her, told her to "walk off" her injuries and otherwise caused her to delay the receipt of proper medical care, thereby worsening her injuries. *Id.* at p. 3.

According to its Statement of Additional Material Facts [ECF No. 35] in response to Kroll's still-pending Amended Motion for Partial Summary Judgment [ECF No. 31], Kroll knew that wet areas on the pool deck have the potential to be slippery, Kroll was walking barefoot when she fell, her feet were wet at the time, and she assumed that the ground was wet even though she did not examine the floor's condition after her fall. [ECF No. 35, p. 3].

Carnival also submits the following additional facts in its opposition to Kroll's partial summary judgment motion: (1) Kroll is diabetic and had been diagnosed as depressed before her fall, (2) she had fractured her right foot approximately a year before the fall aboard the *Vista*, (3) she was on medication for high blood pressure and cholesterol, and (4) she did not see a physician for a week and a half after the cruise ended. [ECF No. 37, p. 3].

The Court's trial scheduling order required Kroll to disclose experts by April 3, 2020 and for Carnival to disclose its experts by April 17, 2020. [ECF No. 10]. In addition, the experts were to be offered for deposition within 14 days of disclosure, and all expert witness discovery had to have been completed by May 1, 2020. The trial scheduling order

also provided that "only those expert witnesses" whose names and summaries/reports were timely disclosed "will be permitted to testify."[3] [ECF No. 10, p. 2].

Kroll served her expert and treating witness disclosure on April 3, 2020. It included two Miami experts: Dr. Francisco De Caso (an engineer to testify about the *Vista's* deck surface material on the Lido Deck) and Dr. Cook, a podiatrist who was to testify about Kroll's medical condition and future care.

Dr. Cook provided a report and a supplemental report. [ECF No. 43-2]. He examined Kroll, reviewed her medical records, and itemized the nature and costs of future medical care in his reports. His initial report contained his opinion that Kroll sustained some level of permanent nerve damage to her left ankle/leg, including possible "CRPS" (complex regional pain syndrome). In his supplemental report, however, Dr. Cook stated that he had ruled out "possible CRPS" based on objective medical studies. *Id.* at p. 3. Instead, he attributed her ongoing symptoms to a peroneal nerve injury. *Id.* He projected future care costs of **$3,700** and assigned Kroll a **3%** impairment rating. *Id.*

---

[3]     United States District Judge Marcia G. Cooke issued the trial scheduling order on September 4, 2019. [ECF No. 10]. The parties filed their consent to full magistrate judge jurisdiction on May 28, 2020 [ECF No. 49], and Judge Cooke referred the case to the Undersigned the next day [ECF No. 51]. Carnival's motion to strike (i.e., the instant motion) was filed on May 8, 2020, before the parties consented to my jurisdiction and before Judge Cooke referred the case to me.

Carnival served its expert witness disclosure on April 17, 2020. The disclosure included initial and supplemental reports from Dr. Barredo. Based on his review, Dr. Barredo concluded that Kroll's condition did not satisfy the clinical criteria for CRPS.

Carnival's counsel took Dr. Cook's deposition on April 23, 2020. During the deposition, Dr. Cook specifically conceded that the opinions provided in his report relating to plaintiff's neurological complaints were outside the scope of expertise, and he even agreed to defer to Defendant's expert neurologist relative to the cause of the purported peroneal nerve injury. Immediately following the deposition, Carnival's counsel initiated a conferral under Rule 7.1 to see if Kroll's counsel would agree to withdraw the opinions, but he was advised that Plaintiff could not agree to do so without first reviewing the Dr. Cook's deposition transcript.

Less than a week later, on April 29, 2020, Kroll disclosed Dr. Suite as a "rebuttal" expert. [ECF No. 43-5]. The disclosure represented that Dr. Suite "has been retained to rebut the testimony of Defendant's experts." *Id.* at p. 2. It did not explain which expert and it did not provide any details of the purported rebuttal opinions.

Instead, the so-called "rebuttal" disclosure of Dr. Suite (a South Florida doctor) explained that he is "expected to testify to the extent and substance of Plaintiff's injuries, Plaintiff's need for future medical care and treatment, as well as causation, and the degree to which any previous injuries or conditions of Plaintiff are or are not related to Plaintiff's present injuries." *Id.* at pp. 1-2. Dr. Suite's report notes that he did not examine Kroll.

7

Instead, he "evaluated" her through a 30-minute telemedicine link from her California home on April 27, 2020, four days after Dr. Cook's deposition. [ECF No. 43, p. 4].

Dr. Suite's Physical Examination section reports that he visually inspected Kroll's feet via video link and that the left one is "*puffier*" and "*more purple*." *Id.* (emphasis added); [ECF No. 43-6, p. 3]. Based on this video interaction with Kroll and a review of her records, Dr. Suite reached a clinical diagnosis, of "Neuropathic Pain Syndrome of the left lower extremity consistent with early Complex Regional Pain Syndrome," which he opines is "a direct result of the slip and fall injury sustained on March 31, 2019 on board a cruise ship." *Id.* at p. 5. The report includes a "Neurological Care Plan for Ms. Vicki Kroll," featuring a "Grand Total of Future Costs" of $1.620 million. He then assigned her a "PIR" (presumed to mean "personal impairment rating") of 20%. *Id.*

Because the parties disagree about whether Dr. Suite is an expert retained to rebut Dr. Barredo, and because they also take different positions on how much of Dr. Suite's report rebuts Dr. Barredo (as opposed to announcing Dr. Suite's own opinions), the Undersigned will attach the entire report as an exhibit to this Order. In doing so, I note that the first five and three-quarter pages of Dr. Suite's report say nothing about Dr. Barredo's opinions. Finally, near the bottom of page 6 (of a 7-page report), Dr. Suite says, "I have **also** been asked specifically to comment on the report of Dr. Victor Barredo, Neurologist in South Miami." *Id.* at p. 6 (emphasis supplied). He then provides one page

of "comments and criticisms," but says he is doing so "with the utmost respect." *Id.* at pp. 6-7.

## II.   <u>Applicable Legal Standards and Analysis</u>

Federal Rule of Civil Procedure 37(c)(1) provides that a party who fails to provide information or identify a witness as required by Rule 26 (26(a) or (e)) is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Federal Rule of Civil Procedure 26(a) requires the disclosure of expert witnesses and, under the conditions here, expert reports.

Expert disclosures, including the disclosure of a rebuttal expert, must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D); *see Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 717 (11th Cir. 2019).

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Morin v. United States*, 534 F. Supp. 2d 1179, 1189 (D. Nev. 2005) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)). When a scheduling order provides for expert witness disclosures, such discloses must be made "at the time and in the sequence directed by the court." *Baldwin Graphics Systems, Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 WL 1300763, at * 1 (N.D. Ill. Feb. 22, 2005).

Compliance with Rule 26's expert witness disclosure rule is mandatory and self-executing. *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 51 (1st Cir. 2001). The purpose of the rule governing expert witness disclosure requirements is to safeguard against surprise. *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (stating that the rule was designed to facilitate a "fair contest with the basic issues and facts disclosed to the fullest practical extent").

An expert may be used for rebuttal if the expert offers evidence that is "intended solely to contradict or rebut evidence on the same subject matter identified by" the affirmative expert of another party. *Burger King Corp. v. Berry*, No. 18-20435-CIV, 2019 WL 571483, at *2 (S.D. Fla. Jan. 8, 2019) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)) (emphasis added); *Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924, 2018 WL 6520934, at *4 (S.D. Fla. Dec. 11, 2018). However, a rebuttal report cannot be used to advance new arguments or new evidence. *See Wreal, LLC v. Amazon.com, Inc.*, No. 1421385, 2016 WL 8793317, at *3 (S.D. Fla. Jan. 7, 2016). Moreover, a report which adds new damages is not a rebuttal expert report. *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, No. 10–24310–CIV, 2011 WL 6372198, at *4 (S.D. Fla. Dec. 20, 2011).

Federal courts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense. *See, e.g., Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272, 277-78 (1st Cir. 2006) (affirming preclusion order even though the result was to exclude

evidence critical to plaintiff's claim). In addition, courts provide similar consequences when an initial expert is designated late, as a purported rebuttal-type expert. *Nelson v. IPALCO Enters. Inc.*, No. IP02477CHK, 2005 WL 1924332, at *8-9 (S.D. Ind. Aug. 11, 2005). *See generally Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1348-49 (11th Cir. 2004) (excluding untimely expert report).

Preclusion is an appropriate sanction for a failure to comply with the witness disclosure requirements. *See* Fed. R. Civ. Pro. 37(c)(1); *Lohnes*, 272 F.3d at 60. However, a district court has discretion to decide whether to impose an exclusion order, such as one striking an expert witness report. *Jackson v. Harvard Univ.*, 900 F.2d 464, 468-69 (1st Cir. 1990). Evaluating a preclusion request involves an analysis of several factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure and the opponent's ability to overcome its adverse effects (i.e., the degree of prejudice and whether it can be cured or ameliorated). *MaCaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003).

Ultimately, a district court has discretion to admit or to exclude an untimely expert report (and to permit or to prevent that expert to testify). *Bearint*, 389 F.3d at 1348-49.

Where a party attempts to designate as a "rebuttal" expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be stricken by the Court for violating Rule 26(a) and the Court's governing scheduling order.

11

*See, e.g.*, *Donell v. Fidelity Nat'l Title Agency of Nev.*, No. 07-00001, 2012 WL 170990, at *4 (D. Nev. Jan. 20, 2012) ("[I]t is clear that Brooks was always intended to testify as an initial expert witness for the Plaintiff. Plaintiff failed to designate him as an initial expert and is now improperly attempting to use him as a rebuttal expert to obtain an extension of the deadline for designating an initial expert.").

In this district, similar to the rule in other districts (as referenced in the other cases cited above), when an initial expert report is improperly submitted under the guise of a rebuttal expert, the expert may be excluded "even if the consequence is to preclude a party's entire claim or defense." *Kendall Lakes Towers Condo. Ass'n, Inc.*, 2011 WL 6372198, at *3. Rule 37(1)(c) compels this result unless the violating party can show that the improper disclosure is substantially justified or is harmless. *See Okupaku v. American Airlines, Inc.*, No. 06-61392-CIV, 2007 WL 3511917, at *1-3 (S.D. Fla. Nov. 17, 2007).

When a party incorrectly proffers an expert witness as a rebuttal expert, some courts permit the expert to provide expert opinion testimony on the rebuttal topics (if there are any) but exclude opinions on other issues. *See, e.g.*, *Point Blank Enters., Inc.*, Case Nos. 18-CV-63130 & 19-CV-61881, 2020 WL 1666763 (S.D. Fla. April 3, 2020).

In other instances, courts in our district have completely excluded experts who were incorrectly branded as rebuttal experts to avoid expired deadlines. In fact, the instant case is hardly the first time that a court has been confronted with an attorney's tactic of classifying Dr. Suite as a rebuttal expert to avoid preclusion when he was first

listed after the expiration of the expert witness disclosure deadline. *See Okupaku*, 2007 WL 3511917, at \*1-3 (concluding that a ruling which permitted Dr. Suite to testify for the plaintiff would be unfair to the defendant because it had relied on the already-filed disclosures in choosing its own medical expert).

District courts, including those in Florida, are not hesitant to exclude or substantially limit expert opinion testimony at trial when an expert is masquerading as a rebuttal expert because the attorney missed the deadline for expert witness disclosures and tried to cure that mistake by strategically and incorrectly attaching the "rebuttal expert" designation to the tardily-disclosed expert. *See Flamingo South Beach I Condo. Ass'n, Inc., v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 21-26 (11th Cir. 2012) (upholding order striking a purported rebuttal expert report because it was not "solely in rebuttal" to the opposing party's expert); *cf. Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013) (striking a "thinly veiled" attempt to have an initial expert report improperly couched as a rebuttal expert report to "circumvent" a failure to make timely expert disclosure); *cf. Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.*, No. 603CV1860ORL19KRS, 2005 WL 2465020, at \*4-5 (M.D. Fla. Oct. 6, 2005) (striking parts of rebuttal report which went beyond identifying purported flaws in opposing expert's analysis and which offered independent analysis not tied to the opposing expert's report); *Allgood v. Gen. Motors Corp.*, No. 1:02-cv-1077, 2007 WL 647496, at \*1-2 (S.D. Ind. Feb. 2, 2007) (striking rebuttal report which introduced new testimony as to damages).

13

Kroll bears the burden to show that substantial justification exists for the Court to allow late-disclosed experts to testify or that the failure to make timely disclosure is harmless to Defendant. Fed. R. Civ. P. 37(c)(1); *Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004); *see also Okupaku*, 2007 WL 3511917, at *1.

There is little doubt that Dr. Suite's expert report was not issued to solely rebut the expert opinions of Carnival's expert neurologist, Dr. Barredo. First, most of his report did not even mention Dr. Barredo. Second, when he finally got around to discussing Dr. Barredo's opinions, Dr. Suite said he was "also" asked to pursue that task. [ECF No. 43-6, p. 6]. The phrasing alone confirms that rebutting Dr. Barredo was not the primary intent of his retention.

It is also clear that Dr. Suite's report is an attempt to add new theories and damages. He is the first and only expert in this case to suggest that (1) Kroll suffers from a "neuropathic pain syndrome;" (2) Kroll will require future medical care costing $1.6 million; and (3) she has a 20% impairment rating. *Id.* at pp. 5-6.

Thus, it is not difficult to see that Dr. Suite's opinions are in the nature of an affirmative expert, not a rebuttal expert.

To be sure, a small section of Dr. Suite's report addresses, and criticizes, Dr. Barredo's expert report. To that limited extent, he is serving as a rebuttal expert.

Although Kroll's counsel did not raise this theory in their initial disclosure of Dr. Suite, it is possible to conclude that Dr. Suite's opinions rebut (although in a small way)

the opinions of both Dr. Barredo **and Dr. Cook**. Dr. Barredo did not assign an impairment rating and he did not offer any opinions about the costs of her future medical care. But Dr. Cook did. He opined that she has a 3% impairment rating and that future medical costs would be $3,700.

Therefore, it can be said that Dr. Suite's report rebuts the impairment rating and future medical cost prediction of Dr. Cook. But Kroll cannot use Dr. Suite to rebut Dr. Cook. If Dr. Suite can be portrayed as a rebuttal expert, then it must be to rebut Dr. Barredo.

But Dr. Suite is a neurologist, just like Dr. Barredo. Dr. Cook, however, is a podiatrist, and it seems odd for Kroll to say that a neurologist was retained at the last minute to rebut the opinions of a podiatrist. But most importantly, **Dr. Cook is Plaintiff's expert**. Kroll cannot justify the failure to timely disclose Dr. Suite by saying he is intended to rebut another **one of Kroll's own witnesses**. If a party could permissibly make a late disclosure of an expert by designating that expert as one intended to rebut another expert retained by the same party, then the disclosure deadline would be illusory, and parties could routinely dodge the deadline by strategically saying that one expert rebutted another expert retained by the same party.

As noted, Kroll argues that any late disclosure should not lead to an exclusion order because the tardy revelation is harmless, given her willingness to permit Carnival

to take Dr. Suite's deposition now. Carnival rejects that theory and contends that Kroll's response ignores several critical points:

It disregards: (1) the Court's earlier-issued orders and its active approach to case management; (2) the fact that Plaintiff already disclosed an affirmative expert on the same topic; (3) the fact that Carnival's counsel deposed that expert; (4) the fact that the opinions of Dr. Barredo, Carnival's expert, were formulated in response to the opinions offered by Dr. Cook; (5) the fact that Dr. Suite contradicts Dr. Cook, and because Plaintiff does not admit her intent to abandon Dr. Cook, she is essentially arguing for a second affirmative expert whose opinions contradict the current one; (6) the fact that the deadline for disclosing a direct expert was, for Plaintiff, April 3, 2020; (7) the analysis under Rule 37(c)(1), which is far more rigorous than whether the party in violation of Rule 26 is willing to offer their witness for deposition; and (8) the fact that, if permitted, such tactics would completely upend the orderly course of litigation, as defendants would be left to the mercy of the plaintiff's leisure to pick and choose the most liberal expert they can find, even if the hired gun is ultimately disclosed just days away from the discovery cutoff (after the original expert auditioned poorly in deposition) as has been done here.

So is Dr. Suite a bona fide rebuttal expert?

To modify the proverb quoted at the start of this Order to make it applicable to the instant motion, if an expert does not act like a rebuttal expert, does not appear to be a rebuttal expert, does not write like a rebuttal expert, and does not actually rebut an

16

opposing expert, then he must not be a rebuttal expert. Alternatively, if an expert acts like a direct expert, appears like a direct expert, writes like a direct expert, and provides expert opinions which do not rebut the opponent's expert because they are direct, affirmative opinions, then he must be a direct expert.

The Undersigned finds that almost none of Dr. Suite's expert report is bona fide rebuttal. To the contrary, it contains opinions which should have been disclosed by April 3, 2020. Phrased differently, the Undersigned largely rejects Kroll's argument that Dr. Suite is a proper rebuttal expert. Therefore, all of his non-rebuttal opinions shall be excluded -- including his $1.6 million future medical care plan theory, his 20% impairment rating, and his opinion that Plaintiff suffers from a neuropathic pain syndrome caused by the subject accident. *See, e.g., Jetport, Inc. v Landmark Aviation, LLC*, No. 1:16-cv-23303, 2017 WL 7732868, at *8 (S.D. Fla. July 11, 2017) (striking all six of Plaintiff's experts and rejecting Plaintiff's effort to salvage the experts by calling them rebuttal experts).

To the extent that a small portion of Dr. Suite's report and opinions offer criticism of Dr. Barredo's expert opinions (which *is* rebuttal-type expert testimony), Kroll may use that modest section in this case. *See Home Design Services*, 2005 WL 2465020, at *5; *see also Point Blank Enters.*, 2020 WL 1666763, at *18.

In order to remove any lingering possibility of prejudice, Carnival may take Dr. Suite's deposition and may file a *Daubert* motion to challenge his few actual rebuttal opinions by September 14, 2020.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 17, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record