**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-23017-CIV-GOODMAN**
**[CONSENT CASE]**

VICKI KROLL,

      Plaintiff,

v.

CARNIVAL CORP.,

      Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO STRIKE**
**PLAINTIFF'S TREATING HEALTHCARE PROVIDERS**

This Order concerns a plaintiff who failed to comply with witness disclosure requirements for treating doctors, and a defendant who waited until after discovery ended to first mention the violation in a motion to prevent those doctors from providing expert testimony.

Under the specific scenario here, the Undersigned **denies** the Defendant cruise ship operator's motion to strike the expert portions of the doctors' anticipated testimony [ECF No. 45], requires the injured passenger to provide a more-detailed, rule-compliant disclosure, and permits Carnival Corp. to take the depositions of Plaintiff Vicki Kroll's treating physicians and treating therapist.

The Undersigned also defers ruling on a related defense request to deem the testimony cumulative (and to exclude most of it).

And, by way of a final introductory point, the Undersigned also notes my less-than-enthusiastic view about the practices and strategies of *both* sides here concerning discovery about the healthcare professionals who treated Kroll.

## I.   <u>Factual and Procedural Background</u>

Kroll's Complaint alleges the following scenario:

While walking to the buffet area on the Lido Deck,[1] Kroll lost her footing on a wet and/or slippery surface when she reached a tiled area. As a result of the fall, she suffered traumatic injuries, including a chipped-off big bone which went into her ankle, torn tendons, broken ankle bones, swelling to her tendons, muscles, and bones, and severe injuries to her bone. [ECF No. 1, p. 2].

The ship's medical staff did not take X-rays, misdiagnosed her, told her to "walk off" her injuries, and otherwise caused her to delay the receipt of proper medical care, thereby worsening her injuries. *Id.* at p. 3.

According to its Statement of Additional Material Facts [ECF No. 35] in response to Kroll's still-pending Amended Motion for Partial Summary Judgment [ECF No. 31],

---

[1]   The Lido Deck is the deck which is home to the outdoor swimming pool and adjacent bars, restaurants, and eating options. Many of the lawsuits filed in this district by passengers against cruise ship operators concern slips, trips, and falls on the Lido Deck.

Kroll knew that wet areas on the pool deck have the potential to be slippery, Kroll was walking barefoot when she fell, her feet were wet at the time, and she assumed that the ground was wet even though she did not examine the floor's condition after her fall. [ECF No. 35, p. 3].

Carnival also submits the following additional facts in its opposition to Kroll's partial summary judgment motion: (1) Kroll is diabetic and had been diagnosed as depressed before her fall, (2) she had fractured her right foot approximately a year before the fall aboard the *Vista*, (3) she was on medication for high blood pressure and cholesterol, and (4) she did not see a physician for a week and a half after the cruise ended. [ECF No. 37, p. 3].

The Court's trial scheduling order required Kroll to disclose experts by April 3, 2020 and for Carnival to disclose its experts by April 17, 2020. [ECF No. 10]. In addition, the experts were to be offered for deposition within 14 days of disclosure, and all expert witness discovery had to have been completed by May 1, 2020. The trial scheduling order also provided that "only those expert witnesses" whose names and summaries/reports that are timely disclosed "will be permitted to testify."[2] [ECF No. 10, p. 2].

---

[2]     United States District Judge Marcia G. Cooke issued the trial scheduling order on September 4, 2019. [ECF No. 10]. The parties filed their consent to full magistrate judge jurisdiction on May 28, 2020 [ECF No. 49], and Judge Cooke referred the case to the Undersigned the next day [ECF No. 51]. Carnival's motion to strike (i.e., the instant motion [ECF No. 45]) was filed on May 8, 2020, before the parties consented to my jurisdiction and before Judge Cooke referred the case to me.

Kroll served her expert and treating witness disclosure on April 3, 2020. It included two retained Miami experts. These experts are not at issue in this motion.

Kroll's disclosure also listed the following healthcare providers, all of whom practice in California, where Kroll lives, and treated her:

1. Dr. Richard W. Yee, a Primary Care Physician

2. Dr. Seiha Thorng, a Podiatrist

3. Dr. Qamar, another Primary Care Physician

4. Dr. Sami Moshi, a Neurologist

5. Dr. Thomas McKenzie, an Orthopedist

6. A "treating physical therapist" named Lindsay Wilson.

[ECF No. 45-1].

For each of these prospective witnesses, Kroll provided only a very generalized narrative statement about the facts and opinions concerning each provider. *Id.* Carnival contends the disclosures are "boilerplate in nature." [ECF No. 45, p. 2]. According to Carnival, these disclosures are "not case-specific in any way and certainly do[] not communicate the essentials of the prospective testimony." *Id.*

As described by Carnival in its motion:

With exceptionally slight variation, each witness is stated to have opinions with respect to "liability and damages." Each is stated to be testifying to "the extent and substance of Plaintiff's injuries." Each is stated to be testifying to Plaintiff's "medical condition and the injuries she suffered as a result of the Defendant's negligence." Each is expected to testify to Plaintiff's "prognosis and impairment, need for future medical care, and

4

the cause(s) of Plaintiff's injury." Each may testify as to the degree to which any previous injuries or conditions are or are not related to Plaintiff's present injuries.

*Id.*

In her disclosure, Kroll purports to reserve the right for each of these witnesses to authenticate documents and testify to the "costs, reasonable costs or reasonableness of Plaintiff's past or future medical treatment and/or conditions." *Id.*

Kroll states that each treating provider is to be testifying not only from the records and X-rays generated from his or her own care, but also based on his or her review of any such materials, as well as his or her "experience, training, and education." [ECF No. 45-1]. Plaintiff seeks to reserve the right for each witness in this category to offer rebuttal opinions.

On May 8, 2020, after expiration of both the fact and expert witness discovery deadlines, Carnival filed a motion to strike the expert testimony portions of all six healthcare providers listed above. [ECF No. 45]. In its motion, Carnival argued that the disclosures Kroll made on April 3, 2020 are "generic" and "identical" and inform it "of precisely nothing when it comes to the substance of each witness's opinion or the specific factual basis." *Id.* at p. 3.

Carnival did not, however, first address the deficient disclosure with Kroll's counsel, or, if it could not obtain more-specific information from Kroll voluntarily, without seeking relief from the Court. Instead, it remained silent and then filed a motion

seeking the extreme relief of an order striking expert testimony from all six witnesses. Kroll filed an opposition response and Carnival filed a reply. [ECF Nos. 47; 55].

The Court has scheduled a special set jury trial for January 11, 2021. [ECF No. 59]. Before Carnival filed the instant motion, Kroll filed a motion for partial summary judgment [ECF No. 31], but that motion does not concern the six named witnesses and their ability to provide expert testimony (as opposed to fact witness testimony, which Carnival is not seeking to preclude).

## II.   Applicable Legal Standards and Analysis

Federal Rule of Civil Procedure 26(a)(2)(C), is clear in its requirement that a witness who is not a retained expert, but who is nonetheless planned to offer expert testimony, must be identified in a disclosure which sets out:

(i)     the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703 or 705; and

(ii)    a summary of the **facts and opinions** to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C) (emphasis added).

"When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) **report.**" *In re Denture Cream Products Liability Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) (internal citation and quotations omitted) (emphasis added). "By contrast, treating physicians offering opinions beyond

those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required." *Id.*

In addition, for treating physicians, the general rule is that a party is not required to provide a Rule 26(a)(2)(B) written report if the physician offers opinions based solely upon observations made during the course of treatment. *See id.*; *Jones v. Royal Caribbean Cruises, Ltd.*, No. 12-20322-CIV, 2013 WL 8695361, at *3 (S.D. Fla. Apr. 4, 2013). The testimony may include opinions related to causation and prognosis, as long as those opinions arise from the witness's observations during the treatment of a party as a patient. *Jones*, 2013 WL 8695361, at *5 (citing *Levine v. Wyeth, Inc.*, No. 09-CV-854-T-33AEP, 2010 WL 2612579, at *1 (M.D. Fla. June 25, 2010)) ("Additionally, 'because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient.'"). "Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis, and the extend of disability, if any caused by the condition or injury." *Jones*, 2013 WL 8695361, at *5.

To the extent the treating physician's opinions extend beyond the facts learned during the care and treatment of the patient, the physician is subject to the disclosure requirements of Rule 26(a)(2)(B). *Ford as Next Friend of Doe v. NCL Bahamas Ltd.*, No. 17-CV-24404, 2019 WL 3937127, at *6 (S.D. Fla. June 4, 2019) (explaining that court needed to determine whether a treating doctor's opinions were necessary to properly diagnose and

treat the patient); *see Wilson v. Taser Intern, Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008) (excluding treating expert's causation opinion on the basis that the cause of the plaintiff's injuries was not needed to explain the treating physician's treatment); *see also Chau v. NCL (Bahamas) Ltd.*, No. 16-21115, 2017 WL 3623562, at *7-8 (S.D. Fla. May 3, 2017) (applying *Wilson* to the testimony of two treating doctors; one of whom could not testify as to causation and one of whom could because the cause of the injury was integral to the doctor's treatment).

Carnival does not contend that the six healthcare providers were required to provide *reports* in order to provide expert-type testimony. Rather, it notes that Plaintiff needed to timely disclose a summary of the facts and opinions if it wishes to have them provide testimony on matters beyond their basic involvement as fact witnesses. According to the disclosures, vague as they may be, Plaintiff wants these witnesses to provide more than mere *fact* testimony; she anticipates expert-type testimony involving opinions on, for example, causation, prognosis, and the need for future medical care.

Carnival argues that the omission of specific facts and opinions and the substituted use of vague, repetitive summaries is material because the issue of medical causation is disputed, and because there are other key issues, such as the potential aggravation of Plaintiff's pre-existing condition and the need, if any, for future medical care for which no case-specific summary was provided.

Therefore, Carnival says, Kroll's failure to provide an adequate summary (as opposed to an actual expert witness report) prevents it from "mak[ing] an informed decision as to which witness, if any, to depose." [ECF No. 45, p. 3]. Furthermore, Carnival argues, the improper disclosure means it "cannot determine the extent to which any witness's testimony is anything but cumulative." *Id.*

Because treating physicians for whom no disclosure (or inadequate disclosure) was made may testify only to lay facts (not opinions on causation, liability, treatment and diagnosis),[3] Carnival argues that the six healthcare providers must be relegated to the classification of lay witnesses (who could not provide expert testimony beyond their specific care and treatment of Kroll).

Kroll's opposition response contends that the disclosures were compliant and that there would be no prejudice to Carnival even if the disclosures were insufficient. She also cites to cases where the courts noted the opponent's failure to compel more-complete disclosures and permitted additional discovery.

Thus, the first issue the Court must tackle is to determine whether Kroll's disclosure complied with the disclosure requirements. As noted, Kroll contends that her disclosures complied with the rule, but the Undersigned disagrees.

---

[3]     *See, e.g., O'Brien v. NCL (Bahamas) Ltd.*, No. 16-23284, 2017 WL 8315925 (S.D. Fla. Aug. 25, 2017) (explaining distinction between treating physician providing narrow lay testimony and one who goes beyond that zone and provides opinions).

The disclosures were generic, largely identical, and detail-free. They are not sufficient to inform a decision about whether to take a deposition of one, some, all, or none of the six healthcare providers. They do not provide the actual facts or the actual opinions. At best, they simply say that the six witnesses will have some opinions and that those opinions will be based on specific facts -- but the actual facts and opinions, tailored to *this* case, were not provided. Saying that a doctor will have an opinion without revealing the actual opinion is tantamount to saying nothing at all. Indeed, the disclosures here are so generic that they could be used in *any* lawsuit involving physical injuries.

For all practical purposes, the disclosures Kroll made were "too abbreviated" to provide Carnival with "any insights as to the pivotal parts of the doctors' testimony regarding causation" and were "nowhere near" reaching compliance level. *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-01094, 2013 WL 1189493, at *8 (N.D. Ga. Mar. 21, 2013).

Although the disclosures were too vague to comply with the disclosure requirement, the sanction or consequence for failing to comply with a Rule 26 disclosure violation is not automatic exclusion of the witness.

Rule 37(c)(1), Federal Rules of Civil Procedure, provides "if a party fails to provide information or identify witness as required by Rule 26(a) or 26(e), the party is not allowed

to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or was **harmless**." (emphasis added).

In determining whether the failure to disclose is substantially justified or harmless, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010) (quoting *Warner v. Ventures Health Care of Gainesville, Inc.*, No. 5:00-Cv-308-Oc-10GRJ, 2001 WL 36098008, at *1 (M.D. Fla. Aug. 1, 2011)) (internal citations and quotations omitted); *see also Jones*, 2013 WL 8695361, at *3-4.

The expert-type testimony which Carnival seeks to exclude from these treating healthcare providers is undoubtedly important. Without testimony about medical causation, Kroll will be unable to establish her case in chief, as causation is "a necessary ingredient for a finding of negligence." *Jones*, 2013 WL 8695361, at *5 (describing testimony as "quite important" and noting that exclusion should be only "cautiously considered").

Like the defendants in *Jones*, *Kondragunta*, and *Torres v. First Transit, Inc.*, No. 17-cv-81162, 2018 WL 3729553 (S.D. Fla., Aug. 6, 2018), Carnival **could have** contacted Plaintiff to obtain more-specific information or sought Court intervention to address the

11

purported non-compliance before the discovery deadline expired, but it failed to do so. The *Kondragunta* Court explained the consequences of remaining silent about the inadequate disclosure and not seeking relief from the Court: "Had plaintiff resisted, defendants could have sought the intervention of the Court. Defendants did not do so, but instead laid in wait, hoping that plaintiff's non-compliance would doom his ability to offer any expert testimony." 2013 WL 1189493, at *8.

Other courts, including district courts in our district, have placed significant weight on a party's failure to timely act if it had genuinely been concerned about the insufficient, overly-vague disclosure. *See First Transit*, 2018 WL 3729553, at *3 (describing Defendant's silence as an "attempt[] to exploit a technicality" and holding that "the potential prejudice to Plaintiffs of striking their experts far outweighs any prejudice to Defendant, especially when Defendant neglected to involve the Court sooner"); *Whitmore v. Federal Express Corp.*, No. 16-cv-80589, 2017 WL 11537385, at *2 (S.D. Fla. Jan. 5, 2017) (describing Defendant's failure to seek relief for deficient expert disclosure until after the discovery deadline as "gamesmanship").

Carnival suggests that it had too narrow of a window to raise Kroll's failure to comply with expert witness disclosure requirements. But it had almost a month after the disclosure to flag the issue, either with Kroll's counsel, or with the Court, or both. As explained in *Whitmore*, "had Defendant timely sought the Court's intervention, the outcome might have been different." *Id.* Even if the time to raise the issue was tight,

Carnival surely could have at least made an attempt. The worst result would have been that the Court denied the request for additional disclosures and perhaps not excluded the testimony. But the Court might have provided additional discovery or might have required more-specific disclosures. We'll never know what Judge Cooke would have done, of course, because Carnival never raised the issue until it filed the motion at issue.

Kroll's efforts to comply with her disclosure obligations were deficient, but Carnival's stalling/inaction should not be approved either. To use the description in *Whitmore*, "neither party's behavior in this case has been exemplary"[4] but "the proper remedy . . . is not striking the experts." *Id.* at *2.

Carnival's decision to withhold its dissatisfaction from the Court until after the expert discovery deadline expired has, in the Undersigned's view, evolved into a substantial factor precluding an order striking the witnesses. *See generally Griffith v. General Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2002) (finding that the district court did not abuse its discretion in denying passenger's motion in limine, seeking to exclude an expert witness because of deficient pretrial disclosures, and emphasizing that Plaintiff

---

[4]     The legal conflict here is capable of being described in terms used by the *Kondragunta* Court, which explained that "just as **defendants took a gamble**—by failing to depose plaintiff's only witnesses on causation in the hopes that plaintiff's arguable compliance with Subsection B and/or C would result in exclusion of these witnesses—**plaintiff also took a risk** in presenting a Subsection C disclosure that did not fully comply with Subsection C." 2013 WL 1189493, at *8 (emphasis supplied).

allowed the dissatisfaction to continue unresolved for more than two years without asking for judicial relief).[5]

Because the trial date is more than four months away, and because any additional discovery from these six healthcare providers would not affect the still-pending motion for partial summary judgment, requiring Kroll to make more-detailed disclosures and permitting Carnival to take depositions of these witnesses seems reasonable and unlikely to significantly prejudice the parties or the Court. *See First Transit*, 2018 WL 3729553; *Kondragunta,* 2013 WL 1189493; *Whitmore*, 2017 WL 11537385.

Recognizing the importance of the testimony Carnival seeks to exclude but also focusing on Carnival's failure to timely seek more-specific disclosures and the feasibility of obtaining discovery significantly before the trial date, the Undersigned exercises the considerable discretion given to trial courts on these issues and denies Carnival's motion while simultaneously giving Carnival more information.

Specifically, Kroll shall, by August 31, 2020, provide comprehensive, more-detailed disclosures for the six healthcare providers. Those disclosures must comply with Rule 26(a)(2)(C). Carnival may then take the depositions of the six witnesses by September 21, 2020.[6] *See generally First Transit*, 2018 WL 3729553, at *3 ("[T]he potential

---

[5]     Similar to the situation in the instant case, the appellate court noted that it did not "commend either party." 303 F.3d at 1283.

[6]     Although the witnesses are in California, Carnival would not have been able to take the depositions of these witnesses in person even if adequate, compliant disclosures

14

prejudice to Plaintiffs of striking their experts far outweighs any prejudice to Defendant, especially when Defendant neglected to involve the Court sooner.").

## III.   <u>Conclusion</u>

The Undersigned **denies** Carnival's motion. Plaintiff must serve compliant, more-detailed disclosures for her six treating experts, and Carnival may take depositions of all, some, or none of them. I defer until trial Carnival's request that I deem the testimony of the six healthcare providers cumulative and preclude duplicative testimony.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 20, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
All Counsel of Record

---

had been made on April 3, 2020. Stated simply, the global Covid-19 pandemic would have precluded in-person depositions. Therefore, any defense argument that a video or telephone deposition is less effective than an in-person deposition would be unavailing.